## RANKIN v. MARION PHOSPHATE CO.

(District Court, S. D. Florida. March 27, 1926.)

No. 364.

I. **Vendor and purchaser** ⚖=214(3)—**Contract to assign contract for sale, requiring performance of obligations by assignee before assignment, held to vest no title in assignee until such performance.**

Contract to assign contract for sale of lands, requiring assignee to perform obligations before contracts were to be assigned, *held* not to have vested title to contracts in assignee, either legal or equitable, until such performance.

2. **Vendor and purchaser** ⚖=141—**Purchaser held not to have breached agreement to obtain opinion whether title was merchantable within 60 days, where attorney's letter to vendor, although not using word "merchantable," stated necessary procedure to acquire clear title.**

Purchaser, under contract for sale of lands, *held* not to have breached agreement to have examination of abstracts made and obtain opinion as to whether title was merchantable within 60 days after receipt, where purchaser's attorney wrote to vendor within such time, stating necessary proceedings in order to clear

title, although not using the word "merchantable" in letter.

3. **Vendor and purchaser** ⚖=214(5)—**Vendor is not excused, because not knowing to whom bond for title was to be made after assignment by purchaser, as bond for title to purchaser, his heirs and assigns, would have relieved it of responsibility.**

Vendor, under contract for sale, was not excused from carrying out contract because of lack of knowledge to whom bond for title was to be made after assignment by purchaser, since bond for title to purchaser, his heirs and assigns, would have relieved it of all responsibility, there being no conveyance of title until full compliance with contract.

4. **Vendor and purchaser** ⚖=78—**Where only times mentioned were 60 days for examination of abstract and 120 days for correcting defects in title, time of acceptance of title was not of essence.**

Where only times mentioned in contract for sale of land were 60 days for examining abstract and 120 days to correct any defects, time of acceptance of title was not of essence of the contract.

5. **Vendor and purchaser** ⚖=140.

Purchaser under contract for sale of land may rely on abstracts furnished by vendor pursuant to contract which required vendor to correct defects therein, and need not go to records.

In Equity. Bill for specific performance by Lamar Rankin against the Marion Phosphate Company. Decree for complainant.

H. M. Hampton, of Ocala, Fla., for complainant.

Daniel & Boggs, of Jacksonville, Fla., for defendant.

CALL, District Judge. This cause comes on for final hearing upon the bill of complaint, the answer thereto, and the testimony taken by special examiner heretofore appointed herein.

The bill of complaint seeks specific performance of a contract for the sale of certain lands lying in Marion, Hernando, and Sumpter counties. On December 10, 1924, the defendant corporation entered into a contract with one Weeks to sell to him the lands, by which contract Weeks bound himself to buy same upon the terms set forth in the contract. The defendant corporation answered the bill, admitting the making of the contract, but claimed that the contract had been breached by the complainant and his assignor, and also that complainant had no title to the contract at the time suit was brought by him, because, prior to the assignment to him, Weeks had assigned it to one Carroll. The answer also, by way of coun-

terclaim, brought in new parties and prayed for affirmative relief.

The two questions to be decided in settling the equities between the complainant and defendant coporation, the contract of sale being admitted, are: (1) Was the complainant the assignee of the owner of the contract at the time this suit was brought? and (2) was there a breach of said contract by Weeks or complainant, which would relieve the defendant of the obligation to perform?

The first of these questions must be decided, it seems to me, upon consideration of the document executed by Weeks and Carroll. There is no question but that. the assignment of Weeks to complainant, dated April 29, 1925, conveyed Weeks'. entire interest to him. The contract between Weeks and Carroll, a copy of which is attached to defendant's answer, after the whereas clauses, is worded as follows:

. "Now, therefore, the said P. L. Weeks, of Hernando county, Florida, for and in consideration of the sum of one thousand (1,-000) dollars, lawful money of the United States of America, to him in hand, paid by R. G. Carroll, of Pinellas county, Florida, the receipt whereof is hereby acknowledged, and the faithful performance of the obligations herein contained, does agree to sell and assign the contracts aforementioned to the said R. G. Carroll upon the following terms and conditions, on which terms and conditions the said R. G. Carroll agrees and does now agree to buy and purchase said contracts."

After stating the terms, such as accepting the lands to which the abstracts to be furnished by the defendant showed a good and merchantable title, paying the defendant the price reserved in the Weeks contract, and further stipulations of payments to Weeks, it concludes as follows: "The said P. L. Weeks does now agree to assign and set over to R. G. Carroll the contract, aforementioned copies of which are hereto attached, concurrently with and upon the full performance of the obligations herein contained." This contract was executed by the parties on February 25, 1925.

[1] Does this contract divest Weeks of the ownership of the contract with defendant, and vest the title to same in .Carroll? Upon the reply to this question depends the decision of the first contention of the defendant. If it does, Weeks had no title to convey to the complainant by the assignment of April 29th. It seems to me there can be but one answer to the question. That answer must be in the negative. It is a contract to convey upon the performance of certain obligations, to be performed by Carroll, and vested no title in the contract in him, legal or equitable, until such performance. If the obligations assumed by Carroll had been performed, equity would have treated the contract as an assignment, in all probability. There is no contention in this case that Carroll ever performed the obligations assumed in said contract. I hold that the complainant had title to the contract when the suit was brought.

[2] Second. Was there such breach of said contract, by either Weeks or the complainant, as relieved the defendant of performance of its contract? The pertinent parts of the contract are as follows:

"1. The seller [the defendant] agrees, to sell and the purchaser [Weeks] agrees to purchase the following described lands: [Then follows a description of the lands, containing 7,005 acres, in these counties.]"

"2. The purchaser agrees to pay the seller for said lands at the rate of eight dollars ($8) per acre."

"Five hunded dollars ($500) has been paid in cash by the purchaser to the seller, the receipt whereof is acknowledged."

"The purchase price shall be paid as follows: One-fourth of the total amount (which shall include the $500 deposit) when the titles are approved by the purchaser's attorney as provided below, and bond for titles is delivered by the seller to the purchaser; the other three-fourths in three annual installments, payable one, two, and three years from date of the bond for titles, with interest on deferred payments to be represented by promissory notes payable at the office of the seller in Savannah, Georgia."

"3" provides for giving a bond for title to the purchaser by the seller.

"4. The seller agrees to supply to the purchaser an abstract of title to the lands above described, properly certified to date by a responsible abstract company, as soon as obtainable. The attorney for the purchaser shall have sixty (60) days from the date said abstract is furnished within which to examine the titles of said lands to see if the same are merchantable."

It then provides that, in the event of the inability of the seller to furnish a satisfactory abstract for any of the property in a reasonable time, or that the attorney shall advise the purchaser that the title to any particular piece is not merchantable, such piece or pieces shall be eliminated from sale. It then proceeds:

"If in the opinion of the purchaser's at-

torney the title to the whole or any particular piece of property is not merchantable, but can easily be made so by securing quitclaim deeds or by a suit in equity, the seller agrees to perfect the title thereto to the satisfaction of the attorney of the purchaser. If it is impossible to make the title merchantable within one hundred and twenty (120) days from the date the purchaser's attorney pronounces it unmerchantable, the deposit shall be returned to purchaser, or he shall have the option of accepting the title in the condition in which it is, or of taking title to that part of the land to which title is good, and cutting out the remainder at the purchase price per acre above stated."

"If the attorney for the purchaser finds the title merchantable, and the purchaser then refuses or neglects to carry out the trade, the deposit shall be forfeited to the seller."

It then provides for the payment of taxes for the year 1924 and subsequent years, and that the terms of the contract shall be binding upon the heirs, successors, administrators, and assigns of the parties.

The proofs show that on February 20, 1925, the abstract to the Hernando county land was delivered to the purchaser; the abstracts to the Marion and Sumpter county lands were delivered at a prior date. About April 15th or 16th a letter from the attorney was received by the defendant, in which he says, quoting as follows:

"Our opinion is based entirely upon the above-named abstracts and only to the date of certification."

"From the examination of the abstracts, we find that the title of the Marion Phosphate Company is a good defensive title to all of the above-described property, except some three pieces to which particular attention is called."

It then proceeds:

"There are innumerable discrepancies and irregularities in these abstracts, which would have to be corrected in order to give the Marion Phosphate Company pefect title. We would suggest, as the best means of perfecting this title, that a suit to quiet title be instituted by the Marion Phosphate Company."

It then offers to consult with the attorneys of the defendant, with a view to clearing up the irregularities and discrepancies referred to, if it should desire, and also calls attention that the abstracts do not cover tax question entirely, and suggests that either the original tax receipts be obtained or the tax records be searched.

Nothing was done toward meeting the suggestions contained in this letter, except that a telephone conversation was had with Weeks, notifying him that, if he would come with his attorney to Ocala, the original deeds would be exhibited, and that, if he would show that Carroll had a right to conclude the transaction, the time for conclusion would be extended to April 30th. Nothing was done by Weeks, except to come to Ocala and ask for 30 days' extension, until on April 29th Weeks and the complainant met the agent of defendant and tendered him the amount of the first payment, which the agent declined to receive, because he was not empowered to close it. Some correspondence passed between Carroll and the parties as to sending original deeds to him for examination.

The defendant contends that the purchaser breached the agreement, in that the 60 days for the examination of the abstracts had passed, and no opinion given as to whether the title was merchantable or not. It does not seem to me that this contention is supported by the testimony. It is true that the attorney does not use the word "merchantable" in the letter, but any one reading that letter must be convinced that the attorney did not consider it merchantable; otherwise, no suggestion as to a suit to quiet the title would have been suggested. The defendant by its contract obligated itself to clear up the title, if not satisfactory to the attorney for the purchaser, if same could be done in 120 days, by procuring quitclaim deeds or suits to quiet title. The final abstract was delivered February 20th; the letter of the attorney received April 15th or 16th, well within the 60-day limitation contained in the contract. It was apparently the idea of the defendant that Weeks and those interested with him did not intend to complete the contract, and were simply playing for time, and I gather from the testimony that it was largely this feeling which actuated the defendant in declaring the contract forfeited.

But time is not of the essence of the contract, and could only be made so by the defendant giving a notice of a reasonable time within which the purchaser must act. Another insuperable objection, it seems to me, to the position of the defendant, is that the payment of the first installment of purchase money was not a condition precedent to the receipt of bond for title. The payment of the first installment and receipt of the bond for title were to be concurrent acts. It seems to me doubtful whether the defendant could

declare the contract forfeited until it had tendered the bond for title and declared the lapse of a reasonable time within which the purchaser should make the payment, or at least offered to do so.

It is apparently the contention of defendant that the purchaser was in default in not furnishing an opinion of an attorney on the title; that the letter was not a compliance with the contract in the 60-day limitation. This contention I do not think tenable, as noted above.

[3] It is also contended that the defendant was excused from carrying out its contract, because it did not know to whom the bond for title was to be made. This contention I do not think it tenable. A bond for title to Weeks, his heirs and assigns, would have relieved it of all responsibility. The case might be different if the contract had been to convey the title. Here there was no conveyance of the title. The title remained in the seller until full compliance with the terms of the contract and the payment of the notes covering the deferred payments.

[4, 5] An attempt was made on April 29th to make a tender of the first payment of the purchase money to one in Ocala, claimed to be the agent of defendant. I think the testimony shows only a special agency for particular purposes, and that it was so understood by the purchaser. I do not view that particular transaction as having any bearing upon the decision of the issues in this case, except that it shows complainant's willingness and desire to complete the transaction within the time limited by defendant. While the party in Ocala was not such agent as to bind the defendant by accepting or refusing a tender, yet he did occupy such relation to the defendant in regard to this transaction as that the notice to him of the willingness and desire of complainant to comply with the contract would prevent a forfeiture of the buyer's rights. It was said: But this extension to April 30th was conditional on Weeks' showing right in Carroll, and this condition was not complied with. This does not·help the defendant. If there was no extension of time, the complainant was within his rights, time of acceptance of the title not being made the essence of the contract. The only times mentioned in the contract were the 60 days for examination of the abstracts and 120 days for defendant to correct any defects in the title.

Something was said in argument about it being·incumbent upon purchaser's attorney to go to the records, instead of relying upon the abstracts furnished by the defendant. I cannot agree with this view. There would be no object in requiring an abstract of title, if the parties depended upon an independent search of the records by an attorney; and besides, under the contract, it was the duty of the defendant to furnish such abstracts and correct any defects apparent thereby. I find the equities with the complainant.

The affirmative relief prayed for in the answer of the defendant will be denied. It will be so decreed.